UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| MARCO SORIANO, | ) |
| --- | --- |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 2:13-CV-439 JD |
| | ) |
| CITY OF EAST CHICAGO, RONNIE EDMONDS, and FRANK ROSADO | ) ) |
| | ) |
| Defendants. | ) |

## OPINION AND ORDER

This case arises under the Family and Medical Leave Act. The plaintiff, Marco Soriano, went on FMLA leave for approximately two months from his position as an equipment operator in the General Services/Street Department of the City of East Chicago. The day after he returned from his leave, he was suspended without pay and was subsequently fired. The City cited his long history of poor attendance, with his failure to follow its procedures for returning from leave being the final straw. Mr. Soriano argues that the City actually fired him in retaliation for his use of FMLA leave, and that the City improperly denied him a portion of his FMLA leave and counted those absences against him. He therefore asserts claims for FMLA retaliation and interference. The City and two of Mr. Soriano's supervisors, whom he also named as defendants, have now moved for summary judgment. For the reasons that follow, the Court finds that there are genuine disputes of fact as to whether Mr. Soriano's rights under the FMLA were violated. Therefore, the defendants' motion is denied.

### I. FACTUAL BACKGROUND

Marco Soriano began working for the City of East Chicago in 1998 in the General Services/Street Department. He began as a laborer, and was promoted to an equipment operator

around 2008. In those positions, he would perform tasks such as operating riding lawnmowers, driving a roller to repair potholes, loading trucks with salt in the winter, and picking up debris in alleys. Around August 2010, though, Mr. Soriano began a pattern of failing to comply with the City's attendance policies. On August 4, 2010, he was given an oral warning for excessive tardiness. He then received a written warning on August 16, 2010, and a one-day suspension on October 12, 2010, again for excessive tardiness. Mr. Soriano also exceeded the twelve permitted absences in 2010, as he called off on fifteen days in that year. For the three extra absences, he received an oral warning, a written warning, and a one-day suspension, respectively. Mr. Soriano also failed to call in on time to report his absences on a number of occasions. From August 2010 to June 2011, Mr. Soriano failed to follow proper call-off procedures on five occasions. He received an oral warning for the first violation, and the discipline progressed up to a five-day suspension for the fifth violation.

On July 15, 2011, Frank Rosado, the City's Director of Human Resources, met with Mr. Soriano to discuss his attendance issues and to enter a Last Chance Agreement. By that time, Mr. Soriano had used all of his floating vacation days for the year. Accordingly, Mr. Rosado permitted Mr. Soriano to break up his remaining five days of vacation, which were supposed to be taken in week-long increments, into floating days that he could use if needed. The parties documented this understanding in an agreement dated July 15, 2011, which noted, "Mr. Soriano has exceeded the contracted allowance for absences. The disciplinary process has progressed to the point where termination is inevitable. In an effort to avoid Mr. Soriano's termination the City will give him a 'last chance' to retain his employment.'" [DE 28-4 p. 19]. The agreement further stated, "Mr. Soriano agrees not to call off while the process of creating a last chance agreement is taking place and agrees to the conditions set forth in that agreement." [*Id.*] Even though this

document indicated that the parties intended to develop a more formal agreement, no such agreement was created. Mr. Soriano thereafter used each of the five extra floating vacation days by September 9, 2011.

On the evening of September 21, 2011, Mr. Soriano began feeling pain in his stomach. He did not realize that anything was wrong at the time, but he took medicine to help manage the pain. The medication "knocked [him] out" and caused him to oversleep the following morning. [DE 32 p. 62]. When he woke up the next day, on Thursday, September 22, 2011, Mr. Soriano was still experiencing sharp pain in his stomach. He noticed that his "belly button was an outie all of a sudden, and it wasn't before," leading him to believe he had a hernia. [DE 32 p. 60–61]. He called in to report his absence as soon as he was able, which was around 9:30 a.m., even though his shift started at 7:00 a.m. Mr. Soriano spoke to the payroll clerk, and told her that he thought he had a hernia and that he was going to try to see a doctor. Ronald Edmonds, who was Mr. Soriano's boss and the Director of the General Services/Street Department, was there at the time, but declined to speak with Mr. Soriano. However, Mr. Edmonds wrote a Corrective Counseling Form stating that Mr. Soriano had again failed to follow proper call-off procedures. [DE 28-5 p. 36]. The following day, Mr. Edmonds wrote a letter recommending that Mr. Soriano "be terminated due to excessive improper call off," noting that Mr. Soriano "has still continued to improperly call off as of September 22, 2011." [DE 28-5 p. 45].

On September 23, 2011, Mr. Rosado spoke to Mr. Soriano. Mr. Soriano reported that he was injured and was going to see a doctor. Mr. Rosado told Mr. Soriano that "he's on thin ice" and that he violated the Last Chance Agreement, and advised Mr. Soriano to request a leave of absence. [DE 28-4 p. 3–4, 21]. The following Tuesday, on September 27, 2011, Mr. Soriano again spoke to Mr. Rosado, telling him that he had a doctor's appointment later that day, and

3

apparently indicating that he had been trying to fax in a letter requesting leave. Mr. Rosado told Mr. Soriano that "he is burying himself." [DE 28-4 p. 23]. Mr. Rosado had also spoken with Mr. Edmonds by that point, and Mr. Edmonds told Mr. Rosado that "[h]e intends to deny any request" for leave by Mr. Soriano. [*Id.*]

Mr. Soriano finally saw his doctor on September 27, 2011, which was the earliest he was able to get an appointment. At that appointment, the doctor diagnosed Mr. Soriano with an umbilical hernia and advised him that he would need surgery. Later that day, Mr. Soriano dropped off a letter to Mr. Edmonds in which he requested a leave of absence "due to illness until further notice from my doctor." [DE 28-5 p. 47]. Consistent with his previous statement to Mr. Rosado, Mr. Edmonds responded in a letter written that same day, stating that Mr. Soriano's request for a leave of absence was denied. The letter notes, "As of 9-22-2011 Marco Soriano was in violation of his Last Chance Agreement . . . ." [DE 28-5 p. 49].

However, the following day, on September 28, 2011, Mr. Soriano submitted a formal request for FMLA leave to the Human Resources Department. He then followed up by providing a letter from his doctor indicating that he was going to have surgery to repair his hernia and that he would need to be off work for about four to six weeks. Accordingly, by a letter dated October 21, 2011, Mr. Rosado informed Mr. Soriano that his request for FMLA leave had been granted. The letter indicated that Mr. Soriano's FMLA leave was only granted retroactive to September 27, 2011, though. The letter also stated that Mr. Soriano would need to provide a release from his doctor to the Human Resources Department and see a nurse at the City Health Department at least two days prior to his return to work. Mr. Soriano then saw his doctor again on November 1, 2011. At that time, the doctor indicated that Mr. Soriano would need to remain off of work through November 18, 2011, and wrote a return-to-work note to that effect. Mr. Soriano thus

brought that note to the City, which subsequently called the doctor and confirmed that Mr. Soriano had been released to return to work on that date. The City accordingly extended Mr. Soriano's FMLA leave, directing him to return to work on Monday, November 21, 2011. In that letter, the City stated that Mr. Soriano needed to provide a signed release to the nurse at the Health Department, and that he "may" schedule an appointment before his return to work.

On November 21, 2011, the day Mr. Soriano was due back, he arrived at work on time for his 7:00 a.m. shift. He had the return-to-work note from his doctor with him, though he had already provided it to the Human Resources Department. Upon arriving at work, Mr. Soriano was instructed to go to the Health Department so that he could be released to return to work by the City nurse. Mr. Soriano did so, and waited there for several hours before being cleared by the Health Department to return to full duty. However, by that time, it was late enough in the day that the Health Department told Mr. Soriano not to report back to work, but just to come back for his shift the following day. Mr. Soriano complied, but when he arrived at work on November 22, 2011, Mr. Rosado told him that he was suspended without pay, and that he would be reviewing Mr. Soriano's attendance history to decide whether to fire him. The following day, Mr. Rosado sent Mr. Soriano a letter stating that "the City has decided to terminate your employment due to your violation of the last chance agreement you signed on July 15, 2011." [DE 28-4 p. 45].

The City views the events regarding Mr. Soriano's return to work somewhat differently. According to the City, Mr. Soriano did not report to work on time on November 21, 2011, but instead arrived at the Health Department at around 11:00 a.m. And because he had not been released by the Health Department to resume work prior to his return date, Mr. Soriano missed the entire day of work on what was supposed to be his first day back. The City thus classified this as an improper call-off by Mr. Soriano, which led to his firing. Mr. Soriano submitted

grievances through his union to contest his suspension and termination, but the City held its position, noting that Mr. Soriano's employment was "terminated for violation of imp[roper] calloffs." [DE 28-4 p. 50]. Accordingly, Mr. Soriano initiated this action by filing a complaint against the City, Mr. Rosado, and Mr. Edmonds for violations of his rights under the FMLA.

## II. STANDARD OF REVIEW

On summary judgment, the moving party bears the burden of demonstrating that there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "material" fact is one identified by the substantive law as affecting the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "genuine issue" exists with respect to any material fact when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. Where a factual record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial, and summary judgment should be granted. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citing *Bank of Ariz. v. Cities Servs. Co.*, 391 U.S. 253, 289 (1968)). In determining whether a genuine issue of material fact exists, this Court must construe all facts in the light most favorable to the non-moving party and draw all reasonable and justifiable inferences in that party's favor. *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008); *King v. Preferred Tech. Grp.*, 166 F.3d 887, 890 (7th Cir. 1999). However, the non-moving party cannot simply rest on the allegations contained in its pleadings, but must present sufficient evidence to show the existence of each element of its case on which it will bear the burden at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Robin v. Espo Eng'g Corp.*, 200 F.3d 1081, 1088 (7th Cir. 2000).

## III. DISCUSSION

Mr. Soriano asserts claims for FMLA interference and retaliation. The defendants moved for summary judgment on both claims, so the Court considers each claim in turn.

### A.    FMLA Interference

Mr. Soriano argues that the defendants interfered with his rights under the FMLA because they improperly refused to characterize the first three days he was absent due to his hernia as FMLA leave, and they held those three absences against him in deciding to terminate his employment. Mr. Soriano first missed work on Thursday, September 22, 2011, at which time he states he called in to report that he thought he had a hernia and that he would be unable to come to work. He remained off work the following two business days before having a doctor's appointment on Tuesday, September 27, 2011. At that appointment, the doctor confirmed that Mr. Soriano had a hernia, and advised that he would need to remain off work while he underwent and recovered from a surgery. Mr. Soriano then submitted the required paperwork to the City to request FMLA leave, but the City only approved his leave retroactive to September 27, 2011, meaning the first three absences related to Mr. Soriano's hernia were not treated as FMLA leave.

The FMLA guarantees qualifying employees the right to take up to twelve weeks of leave in a one-year period, and the right to be reinstated to the same position upon returning from leave. *E.g.*, 29 U.S.C. §§ 2612(a)(1), 2614(a)(1). The FMLA also prohibits employers from taking any action that would interfere with or restrain employees from invoking those rights. 29 U.S.C. § 2615(a)(1) ("It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under [the FMLA]."). As applicable here, that means that "employers cannot use the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotion or disciplinary actions; nor can FMLA leave be counted under no fault attendance policies." 29 C.F.R. § 825.220(c). In order to make out a claim

7

for FMLA interference, a plaintiff must establish five elements: (1) he was eligible for the FMLA's protections; (2) his employer was covered by the FMLA; (3) he was entitled to leave under the FMLA; (4) he provided sufficient notice of his intent to take leave; and (5) his employer denied or interfered with FMLA benefits to which he was entitled. *Preddie v. Bartholomew Consol. Sch. Corp.*, 799 F.3d 806, 8 (7th Cir. 2015). An interference claim typically does not require a plaintiff to establish a discriminatory or retaliatory intent, but only to prove that "the employer denied the employee his or her entitlements under the Act." *Shaffer v. Am. Med. Ass'n*, 662 F.3d 439, 443 (7th Cir. 2011).

In moving for summary judgment, the defendants only argue that Mr. Soriano is unable to meet the fifth element—that they denied or interfered with FMLA benefits to which Mr. Soriano was entitled—since Mr. Soriano was granted FMLA leave and was not disciplined until after he returned. However, as Mr. Soriano points out, the City only approved his leave request retroactive to September 27, 2011, even though he had to miss work on September 22, 23, and 26 for the same condition. The defendants do not contest for the purposes of this motion that Mr. Soriano was entitled to leave on those dates,[1] arguing that that question is moot since Mr. Soriano was not disciplined for those absences. However, there is evidence that the City relied at least in part on Mr. Soriano's absences on those dates in deciding to terminate his employment, which would satisfy the interference element. *See Preddie*, 799 F.3d at 818 ("[T]he ways in which an employer may interfere with FMLA benefits are not limited simply to the denial of

---

[1] As noted in a footnote below, that will be a factual dispute for the jury to resolve, likely boiling down to whether Mr. Soriano provided sufficient notice of his need to be absent on these dates. 29 C.F.R. § 825.303(a), (c). Because an interference claim does not require an intent to discriminate, though, but merely a showing that the employer denied the employee rights to which they were entitled under the FMLA, *Shaffer* 662 F.3d at 443, the fact that the City did not designate those days as FMLA leave has no bearing on that question.

8

leave. Interference also encompasses 'us[ing] the taking of FMLA leave as a negative factor in employment actions' . . . ." (quoting 29 C.F.R. § 825.220(c))).

In particular, the City marked Mr. Soriano's absence on September 22, 2011 as an improper call-off. [DE 28-4 p. 38 (recording September 22, 2011, as an improper call-off); 28-5 p. 3–5, 36, 51 (noting that Mr. Soriano's absence on September 22, 2011 was characterized as an improper call-off in violation of the Last Chance Agreement.)]. The City also cited improper call-offs as a basis for Mr. Soriano's firing, suggesting it may have taken the September 22 absence into account in making that decision. [DE 28-4 p. 5 (stating that Mr. Rosado met with Mr. Soriano on November 22, 2011 to discuss the "violations" (plural) "of the terms of the Last Chance Agreement including improper call-offs" (again, plural)), "and excessive absences *including* his failure to return to work as on October [*sic*] 21, 2011" (emphasis added)), p. 50 (stating that Mr. Soriano was "terminated for violation of imp[roper] calloffs")]. In fact, Mr. Soriano's supervisor actually recommended on September 23 that he be fired for that reason. [DE 28-5 p. 45 ("I . . . recommend that [Mr. Soriano] be terminated due to excessive improper call off. . . . He has still continued to improperly call off as of September 22, 2011.")]. Though, as the City argues, Mr. Soriano was not actually fired immediately following his absence on September 22, Mr. Rosado's notes on Ms. Soriano's attendance history state that Mr. Soriano had an improper call-off on September 22 and that his department head recommended the following day that he be fired, [DE 28-4 p. 38], and it is reasonable to believe that that information may have been at least a negative factor in his decision. In addition, because the City did not construe Mr. Soriano's absences on September 23 and 26 as protected by the FMLA, either, and because Mr. Soriano had exhausted his available leave time under the Last Chance Agreement by that time, a jury could find that the City considered those absences to be violations

9

of the Last Chance Agreement, which was also cited as a basis for Mr. Soriano's firing. [DE 28-4 p. 5 (noting "excessive absences" as among the violations of the Last Chance Agreement), p. 6 (stating that Mr. Soriano "was terminated from employment due to the violations of the Last Chance Agreement")].

The defendants argue in response that Mr. Soriano was fired for his failure to properly return to work on November 21, not for these prior absences. As discussed below, there is a dispute as to the circumstances of Mr. Soriano's return to work. But even accepting the City's version of those events, a jury could find that these prior absences still played a role in the City's decision. As the evidence noted above shows, the documents do not cite to November 21 in particular as the sole reason for Mr. Soriano's firing. [*E.g.*, DE 28-4 p. 5, 45, 50; *see also* DE 32 p. 97–98 ("Q. . . . [W]hat were you told the reason was for your termination? A. I was told a couple different things. At first, I was told it was for tardiness. Then I was told for absences. Then I was told for improper call-offs.")]. Rather, they refer to cumulative attendance problems, of which the City may have considered these absences to be a part. In addition, if even a single attendance violation would have triggered Mr. Soriano's firing after the Last Chance Agreement, the City could have fired Mr. Soriano after either of the two instances that it reprimanded him for excessive tardiness following the Last Chance Agreement, or following what the City deemed to be the improper call-off on September 22. It did not do so, though. A jury could reasonably infer that Mr. Soriano's attendance on November 21 may not have independently caused his firing if the City had not also counted the September 22, 23, and 26 absences against him.

Thus, even if Mr. Soriano failed to properly receive clearance from the Health Department in advance of his return to work on November 21, which is also in dispute, as discussed below, and that was the precipitating factor in his termination, a jury could find that

the City also considered these absences as a negative factor in making that decision. That suffices to create a jury question as to whether the defendants denied or interfered with benefits to which Mr. Soriano was entitled. *See Preddie*, 799 F.3d at 818 (finding evidence of interference where the employer cited the employee's absences in general as a reason for his termination, and many of his absences were protected by the FMLA); *Goelzer*, 604 F.3d at 994 (finding that indications that the employer considered the plaintiff's absences in deciding to terminate her employment were sufficient to avoid summary judgment on an interference claim, even where the employer offered plausible reasons that may have also contributed to the decision). Notably, as mentioned above, the defendants did not dispute for the purposes of this motion that Mr. Soriano was entitled to this leave and that he provided adequate notice[2] (the third and fourth elements of an interference claim). Accordingly, the dispute as to the interference element is sufficient to defeat summary judgment, so the Court must deny the motion for summary judgment as to the interference claim.

**B.    FMLA Retaliation**

Mr. Soriano next asserts a claim for FMLA retaliation. The FMLA "makes it unlawful for an employer to retaliate against an employee who exercises his FMLA rights." *Carter v. Chi. State Univ.*, 778 F.3d 651, 657 (7th Cir. 2015). To establish a claim for FMLA retaliation, a

---

[2] Though Mr. Soriano did not report his absence on September 22 until after the start time of his shift, the FMLA would consider his notice timely and would prevent the City from disciplining Mr. Soriano for that reason if Mr. Soriano gave the notice "as soon as practicable under the facts and circumstances of the particular case." 29 C.F.R. § 825.303(a), (c) (stating that an employer may enforce its customary notice policies unless "unusual circumstances" prevent the employee from providing the otherwise-required notice); *Webster v. Milwaukee Cty.*, 731 F. Supp. 2d 837, 847–48 (E.D. Wis. 2010) ("[I]f emergency circumstances prevented [the employee] from requesting leave in advance of the start of his shift, [the employee] was required to provide notice 'as soon as practicable under the facts and circumstances of the case.'"). Oversleeping as a result of medication he had to take for his condition could potentially constitute unusual circumstances that would excuse Mr. Soriano's lack of prior notice. Ultimately, that will be a question of fact for a jury.

plaintiff must show "(1) he engaged in a protected activity; (2) his employer took an adverse employment action against him; and (3) there is a causal connection between the protected activity and the adverse employment action." *Pagel v. TIN Inc.*, 695 F.3d 622, 631 (7th Cir. 2012). The defendants do not dispute the first two elements; Mr. Soriano engaged in protected activity by taking FMLA leave, and his firing was an adverse employment action. The dispute is only whether those two are connected. To establish that element, a plaintiff "does not need to prove that 'retaliation was the *only* reason for [his] termination; [he] may establish an FMLA retaliation claim by 'showing that the protected conduct was a substantial or motivating factor in the employer's decision'." *Goelzer v. Sheboygan Cty., Wis.*, 604 F.3d 987, 995 (7th Cir. 2010) (quoting *Lewis v. Sch. Dist. No. 70*, 523 F.3d 731, 741–42 (7th Cir. 2008)). "A motivating factor does not amount to a but-for factor or to the only factor, but is rather a factor that motivated the defendant's actions." *Lewis v. Sch. Dist. No. 70*, 523 F.3d 730, 742 (7th Cir. 2008). To make this showing, a plaintiff can rely on direct or circumstantial evidence, including "suspicious timing" and "ambiguous statements from which a retaliatory intent can be drawn." *Pagel*, 695 F.3d at 631.

The Court finds that there is sufficient evidence from which a reasonable jury could find that Mr. Soriano's use of FMLA leave was a motivating factor in his firing. First, there are statements suggesting that the City viewed Mr. Soriano's request for leave with disfavor and may have held it against him. When Mr. Soriano spoke to Mr. Rosado on September 23 about his need for leave, Mr. Rosado "told him he's on thin ice," according to Mr. Rosado's notes. [DE 28-4 p. 21]. When Mr. Soriano called Mr. Rosado the next week to let him know he had a doctor's appointment and would be requesting leave, Mr. Rosado "told him that he is burying himself," again according to Mr. Rosado's own notes. [DE 28-4 p. 23]. The defendants attempt

to soften these statements by arguing that Mr. Rosado did not know at that point that Mr. Soriano's condition would qualify him for FMLA leave, so he viewed these absences as just another example of Mr. Soriano's poor attendance record. However, Mr. Soriano testified that when he called off on September 22, he reported that he believed he had a hernia. Mr. Rosado's notes from September 22 and 23 also reference a leave of absence, so there is evidence that Mr. Rosado knew at that time that this was more than just a sick day and that it pertained to a serious medical condition. [DE 28-4 ¶¶ 9, 10; p. 21]. Thus, a jury could find that Mr. Rosado was referring to Mr. Soriano's need for a medical leave of absence when he told Mr. Soriano that he was "burying himself," which could be evidence of retaliation. *See Goelzer*, 604 F.3d at 994–96 (finding that a boss's comments indicating displeasure with the employee's absences could support a retaliation claim where those absences were protected by the FMLA).

Moreover, even before Mr. Soriano submitted a formal request for a leave of absence, Mr. Edmonds told Mr. Rosado that he "intends to deny any request" for leave. [DE 28-4 p. 23]. And when Mr. Soriano submitted a written request to Mr. Edmonds on September 27 for a leave of absence due to his illness, Mr. Edmonds did not advise Mr. Soriano to apply for FMLA leave, but rather sent him a letter purporting to deny the request on the basis that he was in violation of the Last Chance Agreement. [DE 28-5 p. 47, 49]. This indicates a degree of hostility towards, or a lack of amenability to, Mr. Soriano's request for medical leave, which could further support a finding that Mr. Soriano's use of that leave contributed to his firing.

The timing of the adverse action relative to Mr. Soriano's leave also suggests that the two are connected. Immediately upon reporting to work after being medically cleared following his leave, Mr. Soriano was suspended without pay and told to go home until the City decided whether to fire him. The following day, the City informed Mr. Soriano that his employment was

terminated. The Seventh Circuit has held that such close temporal proximity can be evidence of retaliation. *King v. Preferred Tech. Grp.*, 166 F.3d 887, 893 (7th Cir. 1999) (finding sufficient evidence of causation where the employer fired the employee one day after she completed her leave of absence). In short, after being told that he was "burying himself" when he indicated he would need a leave of absence, Mr. Soriano was suspended and then fired immediately upon his return from leave. A jury could find from those facts that Mr. Soriano's FMLA leave was a motivating factor in his firing.

The City responds by arguing that Mr. Soriano was actually fired at that time because he failed to receive a medical clearance from the Health Department prior to his return to work, as he had been instructed. *See Goelzer*, 604 F.3d at 995 (stating that when a plaintiff presents evidence of retaliation, "the case must proceed to trial unless the employer presents unrebutted evidence that it would have taken the adverse action against the plaintiff even if it did not have a retaliatory motive."). The City contends that it told Mr. Soriano that he needed to see the Health Department at least two days prior to his return from work so that he could be cleared to return, but that Mr. Soriano did not do so. As a result, when Mr. Soriano arrived at work on November 21, he had to be sent to the Health Department before he could report to his position, and by the time he was cleared, it was too late in the day for him to start his work.

A jury could certainly find on this record that Mr. Soriano failed to follow the City's instructions for his return to work. And in light of Mr. Soriano's attendance record, it would be possible for a jury to find that this failure would have resulted in Mr. Soriano's firing independent of any other improper reasons. The Court cannot conclude that a jury would have to reach those conclusions, though, such that summary judgment would be warranted, particularly because retaliation need only be a motivating factor in an adverse action, not the only factor or

14

even the main factor, to support a retaliation claim. First, as noted above, there is evidence that the City also considered the absences at the beginning of Mr. Soriano's leave—the same absences for which Mr. Rosado said Mr. Soriano was "burying himself"—in deciding to terminate his employment. [DE 28-4 p. 3–5, 23, 50; 28-5 p. 49]. In addition, when Mr. Soriano was placed on suspension, he was told that Mr. Rosado was going to review the Last Chance Agreement and his other write-ups to determine whether he would be fired, [DE 32 p. 82–83], which also suggests that Mr. Soriano's return to work was not solely responsible for his firing.

Moreover, the City did not fire Mr. Soriano immediately after his absence on September 22, even though it counted that day as an improper call-off and a violation of the Last Chance Agreement, and even though it claims that it was not aware at that time that the absence was related to any need for FMLA leave. But after Mr. Soriano went on leave for two months and was then considered absent on his first day back while he received clearance from the Health Department, he was immediately suspended without pay and then fired. The notable difference between those two instances of similar conduct is that the latter one was preceded by an extended medical leave of absence, which could potentially explain the different result. Therefore, particularly given the statements discussed above indicating disapproval of Mr. Soriano's need for leave, the Court believes that there is a dispute over whether that leave was at least a motivating factor in Mr. Soriano's firing, even if his failure to properly return to work was also a substantial factor.

There is also at least some dispute as to the circumstances of Mr. Soriano's return to work. The City claims that Mr. Soriano did not show up to work until about 11:00 a.m. on November 21, the day he was due back, meaning he not only failed to come to work on time but also failed to report his absence. However, Mr. Soriano testified that he arrived at work at his

15

normal starting time of 7:00 a.m., at which point he was instructed to go to the Health Department to receive his medical clearance. [DE 32 p. 112]. The defendants argue that that testimony should be disbelieved because it is not corroborated by other evidence and a party cannot avoid summary judgment with their own self-serving statements. The Seventh Circuit has repeatedly stated, though, that "[s]elf-serving" affidavits or deposition testimony "can indeed be a legitimate method of introducing facts on summary judgment." *Widmar v. Sun Chemical Corp.*, 772 F.3d 457, 459–60 (7th Cir. 2014); *Hill v. Tangherlini*, 724 F.3d 965, 956 (7th Cir. 2013) ("As we have repeatedly emphasized over the past decade, the term 'self-serving' must not be used to denigrate perfectly admissible evidence through which a party tries to present its side of the story at summary judgment."). Mr. Soriano had personal knowledge of what time he reported to work, and his testimony on that point cannot be disregarded at summary judgment.

The defendants also argue that Mr. Soriano failed to receive clearance from the Health Department prior to his return date, as they claim he was instructed to do. The first letter to Mr. Soriano approving his FMLA leave stated that, at least two days before his return to work, he had to provide a release from his doctor and see the city nurse at the Health Department. [DE 28-4 p. 34]. The second letter, though, only said that Mr. Soriano had to provide a signed release and that he "may" make an appointment at the Health Department before his return to work. [D 28-4 p. 36]. Mr. Soriano did provide a medical release from his doctor well in advance of his return, as the City's records indicate that it received and verified the doctor's note by November 9, thus satisfying at least the requirement that he provide a release from his doctor. And although Mr. Soriano was unsure as to the precise dates, he testified at his deposition that as soon as he was informed that he needed to report to the Health Department in order to return to work, he did

so without delay, which could create some doubt as to whether he failed to comply with the City's instructions for his return. [DE 32 p. 87–89, 101–02].

In light of these inconsistencies, and because of the evidence just discussed that Mr. Soriano's FMLA leave may have at least contributed to his firing even if he did not comply entirely with the instructions for his return to work, the Court finds that there is a genuine dispute as to whether Mr. Soriano's use of FMLA leave was a motivating factor in the termination of his employment. Therefore, the Court must also deny the motion for summary judgment as to the FMLA retaliation claim.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment [DE 26] is DENIED.

SO ORDERED.

ENTERED: March 30, 2016

          /s/ JON E. DEGUILIO
Judge
United States District Court